UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA G. VASQUEZ,<br><br>           Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security<br><br>           Defendant. | 1:12-cv-1459  GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff  Maria Vasquez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance pursuant to Title II of the Social Security Act.[1]  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedures, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

Gary S. Austin, United States Magistrate Judge.[2]

## BACKGROUND AND PRIOR PROCEEDINGS[3]

Plaintiff was born in 1963, has a third grade education, and suffers from obesity. She is unable to communicate in English. She previously worked as a bicycle assembler, but she has been unable to work for several years due to problems with her lungs. AR. 44, 71, 79, 344, 368. She also has been diagnosed with anxiety and depression. AR 370, 456-457.

Plaintiff first applied for Social Security Disability Insurance Benefits on March 11, 2009. AR 158-164. After her applications were denied, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). AR 30, 78-79. ALJ Robert Evans held a hearing on May 10, 2010. AR 67-77. On June 4, 2010, the ALJ issued an unfavorable decision. AR 42-47. The Appeals Council denied review (AR 1-3), and the ALJ's decision became the final decision of the Commissioner which is the subject of the instant appeal.

## MEDICAL RECORD

The entire medical record was reviewed by the Court. AR 230-468. At issue here are the opinions of six doctors: 1) Dr. Moon Chan Chang, M.D., a treating physician, 2) Dr. Nkiruka Akabike, M.D., a treating physician, 3) Dr. John Sedgh, M.D., a consultative examining physician, 4) Dr. Camille B. Williams, M.D., a non-examining state agency physician, 5) Dr. K Beig., M.D., a non-examining state agency physician, and 6) Dr. Neda Jevaherian, a consultative examining physician. The first five physicians addressed Plaintiff's physical conditions. Dr. Jevaharian assessed Plaintiff's psychological impairments.

    **a)**    *Dr. Moon Chang, M.D.*

Ms. Vasquez began receiving treatment from Dr. Moon Chang, M.D. at Kaiser Permanente in July 2007. AR 229-330, 374, 375-426, 428-468. Plaintiff told her primary Dr.

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 9 & 10).
[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Chang that she had a cough and shortness of breath during exertion for the past four years, and smoked one pack of cigarettes per day. AR 266. Dr. Chang told Plaintiff to stop smoking. AR 267.

At that time, Plaintiff underwent a chest x-ray that showed bilateral chronic interstitial changes. AR 279-80. In August 2007, a chest CT scan showed "extensive" interstitial lung disease. AR 285-86.

In May 2008, Plaintiff complained of joint pain and fatigue, and reported that she was trying to quit smoking. AR 249. She breathed with normal effort and showed normal breath sounds, and no respiratory distress. AR 249-250. Plaintiff said she was not taking pain medication, and she had normal range of motion. AR 249-250. Later that month, Dr. Chang noted that Plaintiff was using supplemental oxygen since April 2008, and that Plaintiff said she felt better after she stopped smoking. AR 247. Plaintiff was not coughing or wheezing, but she reported some shortness of breath on exertion. AR 247. There were no reports of psychological distress. AR 247.

In September 2008, Plaintiff was doing better, had no respiratory distress or coughing, but felt shortness of breath on exertion. AR 241-242. Dr. Moon told Plaintiff to use oxygen only when ambulating. AR 242. Plaintiff underwent a chest CT scan in October 2008, which was unchanged from her last examination in August 2007. AR 314-15.

Dr. Chang saw Plaintiff again in January 2009, and noted that she had "some" shortness of breath, but no wheezing, no respiratory distress, and normal breath sounds . AR 233. Dr. Chang noted again in February 2009 that Plaintiff did not cough or wheeze, but had shortness of breath. AR 231. He diagnosed her with chronic respiratory failure, interstitial lung disease, chronic obstructive pulmonary disease, and obesity. AR 232.

On July 17, 2009, Dr. Chang again diagnosed plaintiff with interstitial lung disease,

chronic obstructive pulmonary disease, and respiratory failure. Dr. Chang gave Plaintiff a fair to poor prognosis.  He found that she could only lift less than ten pounds occasionally, rarely lift ten pounds, and never lift twenty pounds or over.  AR 374.  The doctor also opined that Plaintiff would be unable to work continuously because of severe shortness of breath and would be absent from work more than four days per month due to breathing problems.  AR 374.

In January 2010, Plaintiff underwent another chest x-ray, which showed that her lung disease had not changed since January 2009. AR 425, 467.  In February 2010, Dr. Chang noted mild interstitial lung disease, shortness of breath.  AR 415.  He also noted that Ms. Vasquez required an oxygen tank when ambulating, and a CPAP machine while sleeping for sleep apnea. AR 427.

    **b)**    *Dr. Nkiruka Akabike, M.D.*

Ms. Vasquez also received treatment from Nkiruka Akabike, MD, at Kaiser Permanente from June through November 2009.  AR 428-468.  In November 2009, Dr. Akabike described Ms. Vasquez' prognosis as guarded. AR 363. Dr. Akabike opined that Ms. Vasquez has limited ability to function due to her severe breathing problems. AR 363-366. Specifically, the doctor opined that Plaintiff could stand and walk up to two hours, could do no lifting, and could not sit continuously, AR 364.  Dr. Akabike also noted that Ms. Vasquez was undergoing treatment for anxiety and depression. AR 365, 453-456.

    **c)**    *Dr. John Sedgh, M.D*.

Dr. John Sedgh, M.D. a consultative examiner evaluated Plaintiff's lung condition in May 2009.  AR 331.  His tests revealed moderate obstruction.  AR 331.

    **d)**    *Dr. Camille Williams, M.D. and Dr. Beig., M.D.*

In June 2009, state agency physician Dr. Camille Williams, M.D., reviewed Plaintiff's records.  AR 344-46. Dr. Williams reviewed Dr. Sedgh's consultative pulmonary function test in

4

addition to the treatment notes. She stated that medical records were unclear as to why Plaintiff needed to use supplemental oxygen, but that Plaintiff appeared to use it as a "matter of course." AR. 346. Dr. Williams opined that Plaintiff could stand and walk for up to six hours, and sit for up to six hours, in an eight hour day; lift and carry up to twenty pounds occasionally and up to ten pounds frequently; and would have no other physical limitations. AR 340-343.

In September 2009, state agency physician Dr. K. Beig, M.D., reviewed Plaintiff's records, and noted that the record was "[u]nclear about [sic] medical necessity of [oxygen] but [Plaintiff] continues to use it." AR 357. Dr. Beig affirmed Dr. Williams's earlier opinion. AR 357.

    **e)**    *Dr. Neda Jevaherian, M.D.*

Dr. Javaherian, a consultative examiner, conducted a mental status examination and diagnosed major depressive disorder due to a general medical condition. AR 370. Dr. Javaherian assessed a mild impairment in dealing with changes in the work setting, and a moderate impairment in activities of daily living due to a physical limitation. AR 371.

## THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, Plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a)-(f). The ALJ proceeds step by step in order and stops upon reaching a dispositive finding that the claimant is disabled or not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[5] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)-(f).

### 1. Summary of the ALJ's Findings and Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 42-47. More particularly, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, and that she had not engaged in gainful activity since May 31, 2008, the alleged onset date. AR 44. Further, the ALJ identified interstitial lung disease and chronic obstructive pulmonary disease as severe impairments. AR 44. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listing impairments. AR 44-46.

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

[5] Residual functional capacity captures what a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC to perform a full range of light work and that she did not have a medically determinable mental impairment. AR 46. He also found that the Plaintiff was not credible. AR 46. Based on the RFC, the ALJ determined that Plaintiff could not perform her past relevant work, however, she could perform other work that exists in the national economy. AR 46-47.

Here, Plaintiff argues that the ALJ erred by: 1) failing to properly assess the medical record, 2) improperly determining that Plaintiff was not credible, and 3) finding that Plaintiff did not have a medically determinable impairment. (Doc. 15).

## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## **DISCUSSION**

**1.   The ALJ Improperly Evaluated the Medical Evidence Related to Plaintiff's Physical Impairments**

Plaintiff contends the ALJ improperly rejected the treating opinions from Dr. Chang and Dr. Akabike. Conversely, Defendant contends that the ALJ properly considered the medical evidence because the treating physician's opinions are not supported by the medical record.

///

**(a)** *The Legal Standards*

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). When the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984). In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a non-examining medical advisor. *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the non-examining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . . ." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, contrary reports from examining physicians, and testimony from the claimant that

conflicted with her treating physician's opinion. *Id.* at 751-52. Thus, the opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent, clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F. 3d 947, 957 (9th Cir. 2002).

When a nontreating physician's opinion contradicts that of the treating physician-but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician-the opinion of the treating physician may be rejected only if the ALJ gives "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995); *Magallanes*, 881 F.2d at 751, 755 (quoting *Sprague v. Bowen*, 812 F.2d at 1230). Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. *Andrews*, 53 F.3d at 1041. Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d at 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n. 7 (9th Cir.1971)).

**(b)** *Analysis*

Because the opinions of the treating physicians were contradicted, the ALJ was required to provide specific and legitimate reasons to reject those opinions. *Murray v. Heckler*, 722 F.2d at 582. After providing a very brief description of the functional assessments of the doctors, the ALJ states the following when assessing the weight of the medical evidence related to Plaintiff's physical impairments :

> I give significant weight to the conclusions of the consultative examiner along with the conclusions of the medical consultants (DDS), because their conclusions are consistent with the objective findings and the evidence of record.
>
> . . . . . . . . . .
>
> I give no weight to the overly generous assessment of Dr. Chang, because his assessment

9

>is not supported by the objective findings and the evidence of record.
>
>. . . . . . . . . .
>
>I give no weight to Dr. Kimka's[sic] overly generous assessment because it is not supported by the medical evidence of the record as a whole.

AR 44-46.  In sum, the ALJ's reasoning for accepting or rejecting the various doctors' opinions was that the opinion was or was not supported by the objective medical record.  Lack of objective medical evidence can be a basis for rejecting a medical opinion.  However, there needs to be a summary and some identification of what objective medical evidence the ALJ is relying on when making this determination. *See Magallanes*, 881 F. 2d 755 (*quoting Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986)).  (rejection of treating physician opinion upheld where the ALJ "summarized the facts and conflicting clinical evidence in a detailed and thorough fashion, stating his interpretations, and making findings"); *Morgan v. Commissioner of Social Sec. Admin*. 169 F.3d 595, 600 - 601 (C.A.9 (Or.),1999).

In this case, the ALJ did not expressly state what objective evidence in the medical record he used to form the basis of his decision. He merely provides a very short summary of the doctors' final opinions without explanation, and accords each decision varying degrees of weight based on a conclusory assessment of the objective medical evidence.  The objective evidence in the medical record is never mentioned, summarized, or discussed.  Thus, there is not enough information outlining the basis of the ALJ's decision for this Court to evaluate whether the reasons for accepting or rejecting the physicians' opinions are supported by substantial evidence. Although the Defendant has identified portions of the record that support the ALJ's decision, a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner.  *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (*citing Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)). Because there is ambiguity in the record, the case will be remanded to allow for a proper evaluation of the medical evidence.

## 2. The ALJ Erred in Finding that Plaintiff Did Not Suffer From a Medically Determinable Mental Impairment.

Plaintiff argues that the ALJ improperly determined that she did not suffer from a medically determinable mental impairment. Defendant argues that the ALJ 's assessment was proper. Moreover, even if the ALJ analysis was incorrect, the medically determinable mental impairment was not severe, so any error was harmless.

When an individual applies disability, an assessment of one's physical or mental impairment is necessary:

> If you are not doing substantial gainful activity, we always look first at your physical or mental impairment(s) to determine whether you are disabled or blind. Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms (see § 416.927). (See § 416.928 for further information about what we mean by symptoms, signs, and laboratory findings.)

20 C.F.R. § 416.908

> (b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.
>
> (c) Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

20 C.F.R § 416.928

The evaluation of mental impairments is governed by 20 C.F.R. § 416.920a which

provides as follows :

> The steps outlined in §§ 416.920 and 416.924 apply to the evaluation of physical and mental impairments. In addition, when we evaluate the severity of mental impairments for adults (persons age 18 and over) and in persons under age 18 when Part A of the Listing of Impairments is used, we must follow a special technique at each level in the administrative review process. We describe this special technique in paragraphs (b) through (e) of this section …
>
> (b) Use of the technique.
>
> (1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). See § 416.908 for more information about what is needed to show a medically determinable impairment. If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.
>
> (2) We must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section and record our findings as set out in paragraph (e) of this section.
>
> 20 C.F.R. § 416.920a

Thus, when a mental impairment is at issue, a special technique must be followed. This procedure requires that an assessment be completed to determine whether a medically determinable impairment exists. Once a medically determinable mental impairment is established, the degree of functional limitations and the severity of the impairment is rated. This process mandates that functional limitations in four areas be evaluated: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. If the degree of functional limitations in the first three functional areas is rated as "none" or "mild" and there are no episodes of decompensation, the impairment is generally considered not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities. 20 C.F.R. § 416.920a(d)(1). The ALJ's written decision must incorporate the pertinent findings and conclusions based on the technique. SSR 96-8p, 1996 WL

374184; 20 C.F.R. § 416.920a(c)(3) and (e).

Here, the ALJ acknowledged that Plaintiff had been diagnosed with depression and anxiety. AR 45, 466. The ALJ also noted that Plaintiff had been evaluated by Dr. Javaherian who diagnosed major depressive disorder due to a general medical condition. AR 45-46, 370. Dr. Javaherian assessed a mild impairment related to dealing with changes in the work setting, and a moderate limitation in activities of daily living due to physical limitations. AR 371. The ALJ gave the conclusions outlined in Dr. Javaherian's report "significant weight because he examined the claimant and his conclusions were not rebutted by any treating source." AR 46. Given that the ALJ adopted Dr. Javaherian's report, the ALJ's finding that Plaintiff did not suffer from a medically determinable mental impairment was erroneous. *See* 20 C.F.R. §§ 416.908 and 416.928.

The Court is not persuaded by Defendant's argument that the record does not show objective evidence of a medically determinable mental impairment. Defendant correctly notes that diagnoses or conclusions do not establish a medically determinable impairment. However, in this case, Plaintiff received a psychological diagnosis from two different doctors (AR 456, 370), she was prescribed medication (Zoloft) to treat the conditions (AR 453, 456-457), and the ALJ gave weight to the functional limitations identified by the consultative examiner. AR 45. Thus, psychiatric signs demonstrating abnormalities of behavior, mood, and thought were established by medically acceptable clinical techniques. *See*, 20 C.F.R. §§ 416.908 and 416.928. Accordingly, the ALJ's finding that Plaintiff did not suffer from a medically determinable mental impairment is not supported by substantial evidence.

Furthermore, the Court is not persuaded by Defendant's argument that any error the ALJ may have committed in this regard is harmless. Under the regulations, once a medically determinable mental impairment has been established, the Commissioner is required to complete

the special technique to determine the severity of the impairment and any decision must specifically address those findings. 20 C.F.R. § 416.920a(e). Here, the ALJ failed to perform the technique so the decision is void of the required findings.[6] Given this violation of the regulations, the case will be remanded to permit a proper evaluation of Plaintiff's psychological condition. On remand, the ALJ shall determine the severity of Plaintiff's medically determinable mental impairment consistent with the process outlined in 20 C.F.R. §  416.920a.

## **REMAND**

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id*. (citation omitted); *see also Varney v. Secretary of Health & Human Serv*., 859 F.2d 1396, 1399 (9th Cir.1988) "Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed."

Here, the Court finds that remand for further proceedings is required to allow the ALJ to properly review all of the medical evidence related to Plaintiff's physical and psychological impairments consistent with this opinion. Since the Court remands this case for renewed consideration of the medical evidence, the Court dispenses with an exhaustive analysis of the

---

[6] This Court makes no finding regarding whether Plaintiff's mental impairment is severe or non-severe.

ALJ's assessment of Plaintiff's credibility. Consideration of Plaintiff's credibility is linked to conclusions regarding the medical evidence. 20 C.F.R. § 416.929. As such, the re-evaluation of the medical evidence may impact the ALJ's findings as to Plaintiff's credibility.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence. Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff, Maria Guadalupe Vazquez, and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 28, 2014**                                    **/s/ Gary S. Austin**
                                                               UNITED STATES MAGISTRATE JUDGE